Hearing Date: June 4, 2015 at 10:00 a.m.
Objection Deadline: May 28, 2015 at 12:00 pm

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>　　　RAFAEL DIAMOND,<br><br>　　　　　Debtor. | ) Chapter 13<br>)<br>) Case No. 15-10317 (JLG)<br>)<br>)<br>)<br>)<br>) |

### MOTION OF UBS FINANCIAL SERVICES INC. FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d) TO EFFECT SETOFF PURSUANT TO 11 U.S.C. § 553

UBS Financial Services Inc. ("UBSFS"), by and through its undersigned counsel, files this motion together with the Declaration of Margaret L. Watson, Esq. dated May 13, 2015 (the "Watson Decl.") and the proposed order attached hereto as **Exhibit 1**, for entry of an Order granting UBSFS relief from the automatic stay under 11 U.S.C. §362(d) to effect setoff by applying funds held by Debtor Rafael Diamond ("Debtor") in a Resource Management Account ("RMA") with UBSFS against the amount owed to UBSFS by Diamond pursuant to 11 U.S.C. §553. In support of this Motion, UBSFS respectfully represents as follows:

**I    INTRODUCTION**

UBSFS seeks to apply funds held by the Debtor in a deposit account with UBSFS against the amount that is owed to UBSFS by Debtor. The Debtor was previously employed by UBS (as defined below) during the period March 2006 through November

7, 2012.[1] In connection with such employment, the Debtor maintained a deposit account with UBSFS, the RMA, which as of April 2, 2015 held $193,669.25 (Debtor's Schedule B lists the amount as $190,000). As a term of the RMA, among other things, Debtor gave to UBSFS a security interest in the funds in the RMA to be used against any financial obligation or debt Debtor owed to UBS. In connection with his employment with UBSFS, Debtor obtained from UBSFS certain Employee Forgivable Loans ("EFLs") which loans became due and payable as of the termination of Debtor's employment with UBS. At the time of the termination of his employment on November 7, 2012, Debtor owed to UBSFS the outstanding balance on the EFLs which was $345,839.09 plus interest, fees and costs. Following Debtor's termination from employment, rather than repay the loans Debtor commenced an arbitration proceeding against UBSFS and UBS Securities LLC (collectively "UBS") and UBSFS filed a counterclaim against Debtor for the amount outstanding under the EFLs. That arbitration went to hearing, and in an Award issued on February 3, 2015, the Panel dismissed Debtor's claims against UBS with prejudice and found in favor of UBSFS on its counterclaim against Debtor. A copy of that Award is annexed as **Exhibit A** to the Watson Decl. submitted herewith. Specifically, the Award directs that Debtor owes UBSFS $451,559.00.

UBSFS asserts a secured claim against the amounts held in Debtor's RMA with UBSFS through its security agreement with Debtor, as further described below, and pursuant to its right to setoff under 11 U.S.C. §553. UBSFS seeks through this Motion to

---

[1] Debtor was originally employed by UBSFS during the period March 2006 to January 22, 2010, when he transferred employment to UBS Securities LLC ("UBS-IB"), which employment terminated on November 7, 2012. For ease of reference, throughout this motion, we collectively refer to UBSFS and UBS-IB as "UBS."

2

#2639174

enforce its security interest in the RMA funds and apply those funds against Debtor's outstanding debt to UBSFS and UBSFS reserves its rights with respect to the remaining debt owed by Debtor.

**II    JURISDICTION**

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief sought herein are Sections 362 and 553 of the Bankruptcy Code and Fed. R. Bankr. P. 4001.

**III    BACKGROUND AND PROCEDURAL HISTORY**

3. Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on February 13, 2015 (the "Petition Date"). On May 5, 2015, the Debtor filed a motion to convert the case to one under Chapter 11 and the hearing date for that motion is scheduled for June 4, 2015.

4. As referenced above, Debtor was employed by UBSFS and then UBS Securities LLC during the period from March 2006 through November 7, 2012. Debtor was initially employed by UBSFS as a Financial Advisor or broker in its Wealth Management business during the period March 2006 through January 17, 2010; and then Debtor transferred to a position with UBS-IB for the period of January 18, 2010 through November 7, 2012.

5. In connection with his employment with UBSFS, Debtor opened a Resource Management Account (the "RMA"). As of April 2, 2015 the RMA held $193,669.25. Debtor's Schedule B lists the amount as $190,000. Pursuant to the express

3

#2639174

terms of the account agreement signed by Debtor when he opened that account, Debtor gave to UBSFS a security interest in all assets in that account.[2] A copy of the relevant provisions of that agreement are annexed as **Exhibit B** to the Watson Decl.[3] Accordingly, UBSFS has a perfected pre-petition secured interest in the entirety of the funds held in the RMA as further described herein.

6.  Based on UBSFS's security interest in the funds in the RMA, the account has been and continues to be subject to an administrative block that commenced on or about November 7, 2012, when Debtor's employment terminated.[4]

7.  During his employment with UBSFS, Debtor received two separate Employee Forgivable Loans ("EFLs"). The EFLs are memorialized in a series of documents, including for each loan a Promissory Note executed by Debtor in favor of UBSFS. The EFLs provide, in relevant part, that upon termination of employment with

---

[2] The RMA incorporates by reference a Master Account Agreement ("MAA") through which Debtor granted UBS "a security interest in any and all Property [as defined in the MAA] belonging to [Debtor] or in which [Debtor] may have any legal, equitable or other interest held by UBS Financial Services or carried in any of [Debtor's] accounts with UBS Financial Services. All Property shall be subject to such security interest as collateral for the discharge of [Debtor's] obligations to UBS Financial Services, wherever or however arising and without regard to whether or not UBS Financial Services made loans with respect to such Property." See Decl., Exh. B at Bates No. UBS 000646.

[3] To the extent that agreements between Debtor and UBS are described herein, such description is for ease of reference and is fully qualified by the agreements themselves and if there is any discrepancy between the description herein and the agreements, the agreements control.

[4] The RMA Agreement also grants UBS the ability to liquidate assets in the RMA account or take other action, in its discretion, to ensure that the account assets are available to satisfy any and all amounts that the account holder owes to UBSFS. See Watson Decl., Exh. B at UBS 000646 ("Liquidation of Collateral or Account). UBS put an Administrative Block on the assets in the RMA on or about November 7, 2012 and that block as continued to date. Notably, even if UBS had only put a block on the funds at issue or otherwise refused to permit the Debtor from withdrawing those funds, more recently or post Debtor's filing of a petition in bankruptcy, the United States Supreme Court has made clear that such a hold is permissible and does not violate the automatic stay. Indeed in *Citizens Bank of Maryland v Strumpf*, 516 U.S. 16, 21 (1995), the Court ruled that a creditor is able to temporarily refuse to pay a debt to a debtor without violation of the automatic stay when that debt is the subject of a setoff. Here, facts in support of the administrative block are even stronger than those supporting the creditor in *Strumpf*, as the administrative block was commenced by UBS far in advance of the bankruptcy and was not as a result of the bankruptcy, but rather as the result of contractual consent for same granted by Debtor. Accordingly, UBSFS has taken no action regarding the RMA funds after the bankruptcy filing but rather maintained the status quo.

4

#2639174

UBS (for any reason), any and all amounts outstanding under the relevant Promissory Notes becomes immediately due and payable with interest at the relevant contractual amount and costs and expenses.

8. As recited above, Debtor's employment with UBS terminated on November 7, 2012. At that time, pursuant to the terms of the EFLs, Debtor was obligated to repay to UBSFS an outstanding amount of $345,839.10 plus accruing interest, fees and costs (the "UBSFS Claim").

9. Based on UBSFS's security interest in the funds held in the RMA account, and consistent with its rights under the RMA and MAA agreements, as of the termination of Debtor's employment, UBS placed an administrative block on the funds in the RMA, which block continues to this day and prohibits Debtor from withdrawing those funds.

10. Rather than meet his obligation to repay the amounts outstanding under the EFLs, Debtor commenced an arbitration against UBS before the Financial Industry Regulatory Authority ("FINRA") Dispute Resolution forum, raising claims of alleged lost compensation and seeking, among other things, relief from his obligations under the EFLs. In that arbitration, identified as FINRA Case No. 13-00609, UBS denied Debtor's claims and UBSFS asserted a counterclaim against Debtor for repayment of any and all monies due under the EFLs. See Watson Decl., Exh. A.

11. Following two pre-hearing conferences and eight hearing sessions, the Arbitration Panel issued its Award on February 3, 2015. *See* Watson Decl., Exhibit A. In the Award, the Panel dismissed Debtor's claims with prejudice and found in favor of UBSFS on its counterclaim. In relevant part, the Award provides:

5

#2639174

> After considering the pleadings, the testimony and evidence presented at the hearing, and the post-hearing submissions the Panel has decided in full and final resolution of the issues submitted for determination as follows:
>
> 1. Claimant's [Debtor's] claims are hereby dismissed with prejudice.
>
> 2. Claimant [Debtor] is liable for and shall pay to Respondent UBS Financial [UBSFS] compensatory damages in the amount of $451,559.00, inclusive of the principal amount of the unforgiven promissory note and taxes advanced to the IRS, plus interest at a rate of 3% per annum from November 7, 2012 until the award is paid in full.
>
> 3. Any and all relief not specifically addressed herein, including attorney's fees, is denied.

*See* Watson Decl., Exhibit A.

12. Pursuant to FINRA's Rules, Debtor had thirty days to pay the Award or face an enforcement action.[5] Rather than pay the Award, on February 13, 2015, Debtor commenced the instant proceeding in Bankruptcy.[6]

13. In connection with these proceedings, despite the Award, Debtor lists the amount of the UBSFS Claim as "unknown" on his Schedule F; however Debtor *does not* list such claim as disputed. Notably, Debtor should have also listed the UBSFS claim on his Schedule D since the claim is secured up to the amount held in Debtor's accounts at UBS pursuant to Debtor's agreements with UBSFS and by virtue of UBSFS's right to set off under 11 U.S.C. §553.

---

[5] FINRA's Rules provide that all monetary awards shall be paid within 30 days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction. Rule 13904(j) of the Code of Arbitration Procedure for Industry Disputes. Notably, however, FINRA declines to commence an enforcement proceeding where, as here, the party owing money damages has filed a petition in bankruptcy and the bankruptcy action is still pending. See FINRA Code of Procedure Rule 9554.

[6] The Debtor erroneously indicates in the motion to convert to a Ch. 11 that the initial bankruptcy petition was filed on February 1, 2015. However, as stated above, the Petition Date is February 13, 2015 and the Arbitration Award was issued on February 3, 2015.

6

#2639174

## IV    REQUEST FOR RELIEF

14.    By this Motion, UBSFS asks for relief from the automatic stay to effectuate a setoff and apply the amount of funds held by UBSFS in Debtor's RMA (which as of April 2, 2015 held $193,669.25) against the amounts owed to UBSFS by Debtor.

15.    11 U.S.C. § 362(d) provides, in pertinent part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
**(1)** for cause, including the lack of adequate protection of an interest in property of such party in interest;
**(2)** with respect to a stay of an act against property under subsection (a) of this section, if-

>    **(A)** the debtor does not have an equity in such property; and
>    **(B)** such property is not necessary to an effective reorganization;

16.    UBSFS submits that both subsections (d)(1) and (2) apply as there is cause to grant relief from the stay due to, *inter alia,* lack of adequate protection for UBSFS's secured claim. In addition, (i) the Debtor has no equity in the funds held in the RMA as UBSFS's claim against Debtor exceeds the amounts held in the RMA; and (ii) the funds in the RMA are not necessary for Debtor's effective reorganization.

A.    <u>There is Cause to Grant Relief from the Automatic Stay</u>

17.    The term "cause" is not defined in the Bankruptcy Code. See *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990), *In re The Scoreboard, Inc.*, 238 B.R. 585, 593 (D. N.J. 1999)(finding that "[c]ause is viewed as a broad and flexible concept.")

7

#2639174

18. Although the term "cause" is not defined, "lack of adequate protection" is the specific example given in the Bankruptcy Code as cause for relief from the automatic stay. UBSFS is a secured creditor by virtue of Debtor's contractual obligations in the MAA and RMA and the security interest described therein as well as by virtue of UBSFS's right to set off. *See* 11 U.S.C. §553. Debtor does not list any other assets out of which UBSFS's secured claim could be satisfied. Thus, UBSFS lacks adequate protection with respect to the secured portion of its claim and therefore UBSFS should be granted relief from the automatic stay to effectuate setoff against the funds in the RMA.

19. UBSFS has both a secured and unsecured claim against Debtor. UBSFS is secured up to the amount of the funds in the RMA and the remaining debt owed to UBSFS is an unsecured claim against the estate.

B.   Set-Off should be Authorized pursuant to 11 U.S.C. § 553

20. 11 U.S.C. § 553 provides that the Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case" except under certain circumstances which are not present here. 11 U.S.C. § 553 (a).

21. As the Supreme Court stated in *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) "[t]he right of setoff (also called "offset") allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding "the absurdity of making A pay B when B owes A.'" (citations omitted).

8

#2639174

22.     The provisions of 11 U.S.C. § 553 do not create a right to setoff, but rather preserve "the right if it otherwise exists under applicable non-bankruptcy law." *See In re Cairns & Associates, Inc.*, 372 B.R. 637, 660 (Bankr. S.D.N.Y. 2007). New York law recognizes a statutory and common law right of setoff. *Id.* (citing *In re Westchester Structures, Inc.*, 181 B.R. 730, 740 (Bankr.S.D.N.Y.1995)).

23.     Once it is established that a right to setoff exists under applicable non-bankruptcy law, as it does in this matter, Section 553 requires that the debts subject to the setoff be both mutual and pre-petition. See *In re Sentinel Products Corp.*, 192 B.R. 41, 45 (N.D.N.Y. 1996).

24.     The debt in this case meets these requirements. Claims need not be undisputed or liquidated at the date of the petition. See, e.g., *Newberry Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398-99 (9th Cir. 1996).

25.     The RMA was established in Debtor's name at UBS years prior to the Petition Date and the EFL obligation was payable to UBSFS upon termination of Debtor's employment which also occurred years prior to the Petition Date. Further the Arbitration Award adjudicating in UBS's favor any dispute Debtor had regarding his

#2639174

obligation to pay UBS under the terms of the EFLS was issued prior to the Petition Date.[7]

26.   To satisfy Section 553's mutuality requirement, the claim and debt need not arise from the same transaction. *In re Malinowski*, 156 F.3d 131, 133 (2d Cir. 1998) ("In set-off the mutual debts may arise from different transactions."); *In re Bolin & Co. LLC*, 527 Fed. App'x. 45, 47 (2d Cir. 2013). Rather, debts are mutual when the debts and claims are in the same right and are between the same parties, standing in the same capacity. *Lines v. Bank of America Nat'l Trust & Sav. Ass'n*, 743 F.Supp. 176, 182 (S.D.N.Y. 1990); *In re Westchester Structures, Inc.*, 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995). In the matter *sub judice*, the debts meet these requirements and setoff should be authorized under Section 553.

---

[7] The Award may be given preclusive effect with respect to UBSFS's claim. In order for collateral estoppel to apply:
  1. the issues sought to be precluded must have been actually litigated;
  2. the issues must be the same as those involved in the prior action;
  3. the issues must have been determined by valid and final judgment; and
  4. the determination must have been essential to the prior judgment.

*In re Baer*, 161 B.R. 334, 337 (E.D.N.Y. 1993) (citing *In re Billings*, 94 B.R. 803 (Bankr.E.D.N.Y.1989). The Panel specifically addressed the issue of the debt owed by Debtor to UBSFS pursuant to Debtor's agreements with UBS and the matter was fully litigated by the Panel after which the Panel issued the Award. Although the Award has not been confirmed (and Debtor's time to challenge has not yet expired), the fact that the award has not been confirmed is not in itself a bar to the Award being given preclusive effect under the doctrines of res judicata and/or collateral estoppel. *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408 (S.D.N.Y. 2003) (holding that an unconfirmed award can still be given preclusive effect if the other elements of collateral estoppel are met.) *See Zdanok v. Glidden Co., Durkee Famous Foods Division*, 327 F.2d 944, 955 (2d Cir. 1964) ("collateral estoppel does not require a judgment 'which ends the litigation * * * and leaves nothing for the court to do but execute the judgment,' ...but includes many dispositions which, though not final in that sense, have nevertheless been fully litigated." (internal citations omitted). So therefore, although not final, the award should be sufficient. However, if the Court does not agree, UBSFS requests, in the alternative, an order (i) recognizing that UBSFS can maintain the administrative hold on the RMA; (ii) granting relief from automatic stay to confirm the award and (iii) granting relief from stay to effectuate the setoff against the RMA funds following confirmation of the Award.

#2639174

B.   Debtor has No Equity in the RMA and it is Not Necessary for an Effective Reorganization

27.   There are grounds to grant relief from the automatic stay since the Debtor has no equity in the funds held in the RMA. Debtor's indebtedness to UBSFS exceeds the amount of funds held in the RMA.[8]

28.   Further, the funds in the RMA are not necessary for Debtor's successful reorganization. Although Debtor has now moved to convert the case to a Chapter 11, Debtor had indicated regarding his filed Chapter 13 plan that he would be funding such plan (which stated he would be paying 10 cents per month to the Ch. 13 Trustee), through current income. There is no indication in Debtor's schedules that the funds in the RMA are necessary for his reorganization.[9]

29.   Thus, because the Debtor lacks equity in the funds in the RMA and because such funds are not necessary for an effective reorganization, stay relief pursuant to 11 U.S.C. § 362(d)(2) is appropriate.

V.   **NOTICE**

30.   Notice of this Motion is being served upon counsel for the Debtor, the Chapter 13 Trustee and all parties requesting notice pursuant to Fed. R. Bankr. P. 2002.

VI   **NO PREVIOUS REQUEST**

No previous application for the relief requested herein has been made to this or any other Court by UBS.

---

[8] The Debtor does not, nor could he, claim that any portion of the funds in the RMA are exempt on Schedule C.

[9] This analysis is the same even if Debtor converts the case to one under Chapter 11.

11

#2639174

WHEREFORE, for all of the foregoing reasons, UBS respectfully requests that it be granted relief from the automatic stay to effectuate a setoff by applying the funds held by UBSFS in Debtor's RMA against the amounts owed by Debtor to UBSFS pursuant to Section 553 of the Bankruptcy Code and for such further and other relief necessary to effectuate the relief granted and as this Court deems appropriate and just.

Dated: May 14, 2015

          McELROY, DEUTSCH, MULVANEY
          & CARPENTER, LLP
          *Attorneys for UBS Financial Services Inc. and UBS Securities LLC*

         By */s/ Nicole Leonard*
           Nicole Leonard, Esq.
           Margaret Watson, Esq.
           88 Pine St., 24th Floor
           New York, NY 10005
           Telephone: (212) 483.9490
           Fax: (212) 483.9129

McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP
Gary D. Bressler, Esq.
1517 John F. Kennedy Blvd.
Suite 1500
Philadelphia, PA 19103

#2639174